Please call the next case. On 12-2348, 95th Street Produce Market v. Elizabeth Park. Good morning, Your Honors. May it please the Court, Clerk 11, on behalf of 95th Street Produce Market. We respectfully submit that the decision of the Illinois Workers' Compensation Commission and the Circuit Court in this case is incorrect as a matter of law, and we request that this Honorable Court overturn that decision and reinstate the findings of the arbitrator. In this case, the Commission and the Circuit Court incorrectly applied the law by finding that the employee was at a greater risk than the general public based solely upon the location in which she was standing when the accident occurred. We all know that the mere fact that the defendant was present at the place of the accident because of her employment cannot suffice to establish that that injury arose out of the employment. The Commission stated that the defendant was somehow at a greater risk than the general public here because as a cashier, she worked in the front of the store that was framed by almost floor-to-ceiling glass windows. Thus, they found that that location was the basis for finding that her accident arose out of her employment. This ignores the years of case law and the seminal case of Brady v. Lewis, Ruffalo & Sons Construction, where the Supreme Court specifically told us that you cannot base compensability on the employee's location at the time of accident. We would submit that the Commission and the Circuit Court in this case applied the Proximate Risk Doctrine, which has been rejected. Even the Positional Risk. Positional, thank you. Positional Risk Doctrine, which has been rejected by the Illinois Supreme Court and which is not supported by any case law since the Brady decision. What do you believe the appropriate standard of review is for us? I believe that this should be reviewed de novo. The facts in this case are not in dispute. Everyone agrees that this employee was in the course of her employment when this accident occurred. There was a third-party vehicle that drove through the front of the store, and that resulted in her injuries. Nobody disputes that fact or any of those facts. Nobody disputes that she required medical treatment after this incident occurred or what that treatment was to date. We simply are disputing whether or not the law was applied correctly here. And as I said, we believe that the Commission based their decision solely upon the location where she was standing, which is improper. A look at the record in this case shows that there was no evidence to support a conclusion that there was some factor which increased the risk. They reference the large glass windows and the proximity of what they refer to as a parking lot. That's actually a misstatement of the fact. The record shows that that was not a portion of the parking lot. It was actually an area where cars were prevented or restricted from driving. So while the Commission references the large glass windows, there's no evidence to show that those glass windows somehow created a greater risk. If we look at Brady, the Supreme Court specifically stated that the building in that case was a corrugated metal building, only about an eighth of an inch thick and plywood walls, which you could say was somehow a flimsy building that could increase the risk. But they did not apply that because there was no evidence to support that conclusion. And the building was 47 feet from the highway, so it was close to the highway. Yes. And naturally somebody went off and crashed into the wall where he was doing his drafting. Right. And then Brady held that that was positional risk. There was no compensation to be awarded. Right. And we would argue that the facts of the present case are in no way distinguishable from the facts in Brady. It was a very similar situation where there was a car that drove off the roadway and struck a building that was close to a roadway. By the way, I want to clarify a potential red herring. The person who actually caused the accident, he had some connection as a delivery man, but it's undisputed that at the time, for whatever reason, he crashed into the store. He was not operating in connection with any business there. Is that correct? I agree with you, and I agree that, as you stated, it's a red herring in this case. We would have a different set of facts and a different analysis if the injury occurred because that business or that delivery person was in the store and caused some injury. That would be a risk somehow related with the employment and who was invited in as part of that business. That's not the case here. This is a neutral risk and must be viewed as a neutral risk because that individual had left, was no different than any other third-party driver at that time. So, again, I submit that there's no evidence to support a conclusion that there was some aspect of the building that caused a greater risk or some aspect of the layout of the property that caused a greater risk. So you're saying that if the nature of this business, hypothetically, was to increase the amount of traffic flow, that that would go to increased risk? Hypothetically, that could increase the risk for those employees if there was some nature of that building that increased traffic. Or the nature of the business, given the position that the business has chosen to put the employee in, physically space. Correct. And that the nature of the business causes. If that nature of the business somehow caused an increased traffic pattern, there's no evidence to suggest that that was the case in this. No, but hypothetically, that could change the scenario from a Brady case. Hypothetically, that could. If there was some nature of the business being run in the case that increased the traffic flow, you could say that then there's a greater risk for the employees because of the increased traffic flow associated with the business. In the present case, there's no evidence of prior accidents, no evidence that there was somehow any aspect of the business or their property that created a greater risk than any member of the general public would be exposed to. Who could have been standing in front of the place. Exactly. And we did show in the evidence that while we weren't making the argument that any member of the general public who was in the store was the analysis that we should look at, we agree that we should look at the general public as a whole, but we did point out there was a customer of the store who was also injured in the same incident. So why would we argue that as a commission we should award benefits to an employee who happened to be standing in the same location as a member of the general public who was shopping at the store at the time? Council has relied on several cases to submit that there was an increased risk, but if you look at those cases, including Illinois Institute of Technology and the restaurant development group, which were stray bullet cases, all of those cases include some evidence that the location inherently led to a greater risk. In Illinois Institute of Technology there was evidence that the area where the employee was working was a high crime area and that used testimony of an area detective. In restaurant development group, there was again evidence that this was an area of increased gang activity. Looking at the present case, there is no such evidence to support the conclusion that the location or any aspect of the business led to a greater risk, and there's no evidence to support the conclusion that the building itself, the structural integrity of the building, led to an increased risk. So in the cases you're saying that he cites, there's something other than the mere location. There's some other factors involved. Exactly. To increase the danger or likelihood of an injury. Exactly. There was evidence in the record in those cases of high crime area, other factors. Exactly. Besides the position of the claimant. Exactly. That takes it out of the positional risk doctrine. Exactly. In this case, counsel suggests that the photos of the building, which were submitted into evidence, clearly show that the building could not stop a vehicle. That doesn't show that this building somehow was inherently less. That was the same argument in Brady, wasn't it, that it was a flimsy building? Wasn't that the argument they made in Brady? I believe it was. Again, while the court in Brady acknowledged what the building was made out of, they said that doesn't inherently show an increased risk. There was no evidence in Brady, as there's no evidence in this case, that there was that increased risk because of the structural integrity of the building. So, again, we respectfully submit that the commission and circuit court decisions should be overturned and the findings of the arbitrator, which concluded that there was no accident which arose out of the employment, those findings should be reinstated. Thank you, counsel. Counsel may respond. May it please the Court. My name is Richard Krumbacher. I'm here on behalf of the Petitioner Appellee Elizabeth Margaritas. This case is one in which the facts are not in dispute, but the inferences drawn from those facts are in dispute. Therefore, this is a case which must be decided on a manifest weight of the evidence basis. Where the facts are subject to more than one inference, it is not a case to be heard de novo. It is a case to be heard on a manifest weight basis. The findings and the inferences from the facts made by the Industrial Commission are subject and entitled to deference. The reviewing court will not set those findings aside or substitute its own judgment unless the findings are against the manifest weight of the evidence. Counsel, just out of curiosity, I may have missed it, but did you set that out in your brief? I cite the Brady case, and I'm quoting from the Brady case. Not Brady. Well, it may be that Brady referred to the manifest weight standard, but did you argue what the correct standard of review is in your brief? I don't have that in front of me, and I believe I did. I believe that it's not. I believe that I indicate that it is a matter of fact, not a matter of law, but I don't have the title and verse and page in front of me. Counsel, aside from that, to cut to the chase, tell us why the positional risk doctrine does not apply in this case. Because the Commission found that my client was subjected to additional risk. Which was what? I'm sorry? What are the additional risks? She heard the guy revving the engine outside the store. She testified that she wondered what he was up to, but she had to stand in the spot by the register where the public is not allowed because the cash register was not cashed out. She's waiting on a customer. She would not have been in that place at that time had she not been required to stand there as part of her job duties. Wouldn't that be part of anybody who's running a cash register facing 95th Street? I mean, how is it not positional risk? I mean, if you have a cash register in a business, you're never going to leave it unattended with customers in there, are you? She does leave the cash register. She testified as long as there's not somebody there waiting for her. And she would have been somewhere else in the store doing other things, as she did. And this is a situation that is different from Brady. There's no indication in the Brady case that the draftsman heard the vehicle coming or that he had to stand by the drafting table despite knowing something was happening outside. In this case, she was subject to additional risk, as the commission found through a series of factors involving the windows, involving the fact that this was a delivery guy, involving the fact that she had to stand there and wait for the individual to come back. What does the delivery guy have to do with this? I was confused by that. What does the delivery guy have to do with this when it's undisputed that he was not there? By the time he had the accident, he was just driving down 95th as anybody else would have been. He was not going to the business. Well, he was leaving, and he had just made the delivery. He's not just a person coming in off the street. He's somebody who's connected to the store. His whole reason of being at the store is for the store's business purpose. But at the time of the accident, he was not going to the store, was he? He was on the premises when she got hurt. No. He was driving down 95th. Not when she got hurt. He returned to the premises in his vehicle. Through the window. Through the window. Okay. I mean, that's kind of a funny way to return to a store. Well, it's no different than he walked back in the door and slugged her in the face for some reason. That would have been compensable. The commission in the Brady court never used the positional risk doctrine in its making its decision. It was only looking at the facts of that particular case and the facts of this case are different. The commission found increased risk because of where she had to stand in the store and the fact that she could not leave the register because it was open. Not just because it had cash in it, but because it was physically open. For those reasons, I ask that the commission's finding be of help. Thank you. Thank you, counsel. Counsel may reply. To speak to a couple of points that were just addressed, if I look at the brief submitted by the plaintiff in this case, the argument is that the decision of the Workers' Compensation Commission and the circuit court was correct as a matter of law. I don't see that he argued the question of the standard of review to be utilized in this case. Even if we were to say that we would look at this as a manis best wait case, he specifically said himself that the inferences drawn on the facts, that's asking us to assume facts that are not in evidence. If we are to imply that the windows were somehow less structurally sound than any other building and that created the increased risk, that's relying on a fact that's not in evidence. He points to the fact that there was testimony that she heard this car and that she was at her register because it was not cashed out. One would anticipate that 95th Street has a lot of traffic and there would probably be a lot of traffic noise. So to simply state that she heard a car revving its engine somewhere, we're looking at hypotheticals that she could have been elsewhere in the store. That's not what the commission and the circuit court relied on here. Their decision states that it was the proximity to the large glass windows which were adjacent to a parking area. Again, I submit that it was not a parking area where vehicles were expected to be. But their decision states that that is why they found an increased risk. Not all of these other facts that we've thrown out there as to what she heard or didn't hear where she may or may not have been. And what this driver was or wasn't doing at the store. To speak to your point, Justice Hudson, the delivery person had been at the store. But he had left. And he had left. The police report shows that he pulled onto 95th Street, lost control and came back into the property and then I guess we could say reentered through the window. He had left the business. But he wasn't going back to the business. Right. His business with 95th Street had concluded for the day. And that's what the Hickory Hills Police Department report introduced set, correct? Exactly. Is that relevant? Not that it matters. I have a question. The cash station, register station is in front of the inside store, in front of the glass? Yeah. It's similar to any other grocery store. In front, going outside the building in front of the glass, there's a sidewalk? There was a sidewalk. There are pictures in the brief submitted by counsel that show this. Okay. Let's go beyond the sidewalk. And there's an asphalt parking lot? There is an asphalt area. The testimony showed that this was not part of the parking lot. I see. Are there any bumper, concrete bumper blocks beyond the sidewalk, adjacent to the asphalt, between the asphalt and the building? I believe that the petitioner, the employee, testified that there were those concrete parking stops in that area. I don't recall whether they were up against the sidewalk. If you look at the pictures that are submitted, there's a concrete parking stop at the end of this area. But then on the right side of this photo, again, this is in counsel's brief, we see that that asphalt area, there's also a concrete parking stop at the end of it, which is adjacent to the parking area. But that isn't where he went. He went right through the windows there. Right. Right here, correct? Right. Okay. So the car came straight through. All there is is a change in height, right? Right. Surface height. Right. Why would there be a change in surface height? A change in the surface height from the asphalt area? Sidewalk, not the asphalt. Is that an implicit admission that that's a dangerous area and that we have to have a barrier? I don't believe that there were any facts submitted into evidence that showed that this was a dangerous area. The petitioner never testified. She had been working at this store for several years. She never testified that anybody else had struck the front of the building before, that there were accidents in this area that should have somehow been prevented. No evidence as to any other accidents, correct? Correct. So I would submit that the purpose of the asphalt. No evidence that a lot of 7-Elevens have both a sidewalk at a higher elevation, asphalt at a lower elevation, but in between there's bumper blocks like at the end of that asphalt area. Correct. There's no evidence of that in this case. We can all make inferences based upon what we know of general parking areas and stores, but to infer that that somehow creates a greater risk asks us to assume evidence that was not submitted in this case.  Thank you. Thank you, Counsel. Thank you, Counsel. We'll stand at recess until 9 o'clock tomorrow.